UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| T.B., <br><br> Plaintiff, <br><br> v. <br><br> LELAND DUDEK, *Acting Commissioner of Social Security*, <br><br> Defendant. | Civil No. 6:24-cv-00073-GFVT <br><br> **OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff T.B. seeks judicial review of an administrative decision denying her claim for disabled widow's benefits and supplemental security income.[1] T.B. brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the administrative law judge who considered the matter. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** T.B's Motion for Summary Judgment [R. 13] and **GRANT** the Commissioner's [R. 14].

**I**

Plaintiff T.B. filed a Title II application for disabled widow's benefits on January 7, 2022 and also protectively filed a Title XVI application for supplemental security income on May 7, 2020. [R. 11 at 35.] She alleged disability beginning June 1, 2019, for both. *Id*. The Social Security Administration denied her claim on its initial review. *Id*. On reconsideration, the Social Security Administration again denied T.B.'s claim. *Id*. T.B. then had a hearing before Administrative Law Judge Tommye C. Mangus, who again denied T.B.'s request for benefits. *Id*. at 46-47. On January 25, 2024, the Appeals Council denied review, leading T.B. to file a

---

[1] The claimant's initials are used in lieu of their name to protect their sensitive medical information contained throughout the Opinion and Order.

Complaint with this Court, seeking review under 42 U.S.C. § 405(g). [R. 1.] Both parties have now filed motions for summary judgment which are ripe for review. [R. 13; R. 14.]

## II

To evaluate a claim of disability for Supplemental Security Income disability benefits, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 416.920. If at any step the ALJ can find that the claimant is disabled or not disabled, the analysis stops. *Id.* § 404.1520(a)(4). First, if a claimant is performing substantial gainful activity, she is not disabled. *Id.* § 404.1520(a)(4)(i). Second, if a claimant does not have a severe impairment or combination of impairments, she is not disabled. *Id.* § 404.1520(ii). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. *Id.* §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses her ability to perform certain physical and mental work activities on a sustained basis despite any impairment. *See id.* C.F.R. §§ 404.1520(e), 404.1545. Under the fourth step, an ALJ uses a claimant's RFC to determine whether she is still able to do her past work. *Id.* § 404.1520(a)(4)(iv). If so, she is not disabled. *Id.*

Finally, if an ALJ assesses a claimant's RFC in conjunction with her age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled. *See Id.* §§ 404.1520(g), 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is

precluded from performing [her] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A

The ALJ completed the five-step analysis to determine T.B.'s disability status. [R. 11 at 38-46.] He first determined that T.B. had not engaged in substantial gainful employment during the period in which she claimed to be disabled. *Id.* at 38. Second, the ALJ found that T.B. had the following severe impairments: lumbar degenerative changes, left shoulder degenerative joint disease, and chronic obstructive pulmonary disease (COPD). *Id.* As part of his analysis, the ALJ found that T.B.'s other alleged impairments were not severe "because they do not significantly limit the claimant's ability to perform basic work activities, are well-controlled with medication, and/or are episodic in nature." *Id.* In reaching that determination the ALJ specifically contemplated T.B.'s left wrist tendonitis and her reports that her pain interferes with her concentration and that she had difficulty completing tasks. *Id*. at 38-39. But at step three, the ALJ found that none of these impairments nor any combination of them met "or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . ." *Id*. at 39.

Before proceeding to step four, the ALJ fashioned T.B.'s RFC. *See* 20 C.F.R. § 404.1520(e). After considering the record, the ALJ determined that:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except it should not require concentrated, frequent exposure to temperature extremes, humidity extremes, noxious odors, fumes, gases, poor ventilation, or industrial byproduct dusts, such as coal, wood, or grain dust.

[R. 11 at 40.]

To make this finding, the ALJ first determined that T.B.'s medically determinable impairments could reasonably be expected to cause her alleged symptoms. *Id.* at 41. However,

3

the ALJ noted that "while the record supports some level of functional limitation as a result of her impairments, it does not support such disabling limitations as alleged by the claimant." *Id*. In reaching his conclusion, the ALJ considered T.B.'s hand problems (including arthritis), back pain, shoulder pain, COPD, and Raynaud's syndrome. *Id*. at 40-41.  Throughout this consideration the ALJ took into account various medical records and doctor's visits detailing T.B.'s health difficulties. *Id*. at 41-45.  In reaching his ultimate conclusion, the ALJ even disagreed with state agency medical consultants – who opined that there was insufficient evidence to evaluate the claim for disability – because the evidence provided at the hearing level supported severe impairments. *Id*. at 45.

Next, the ALJ proceeded to step four and concluded T.B. has no relevant past work experience. *Id.*  Proceeding to step five, the ALJ heard from a vocational expert and determined that there are numerous jobs T.B. can perform in the national economy, such as office helper, labeler, and inspector. *Id*. at 45-46. Therefore, the ALJ found that T.B. is "not disabled." *Id*. at 46.

**B**

The Court's review of the ALJ's determination is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence" is said to be "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen*

*v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To decide whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). A reviewing court is restricted from making factual findings *de novo*, resolving conflicts in the evidence, or making credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Rather, if the Commissioner's decision is supported by substantial, legitimate evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714.

T.B. raises two issues with how the ALJ decided her case. She argues that the RFC adopted by the ALJ was not supported by substantial evidence because it is based solely on the ALJ's lay opinion and that the ALJ further erred by failing to consider T.B.'s non-severe mental impairment in the RFC assessment. [R. 13 at 6.] For her first argument T.B relies heavily on the so-called "*Deskin* Rule." *See Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 911 (N.D. Ohio 2008). For her second she primarily appears to contend that "it is unclear whether the ALJ considered the mental impairments in the RFC assessment" and thus remand is appropriate to consider those mental impairments. [R. 13 at 18.]

**1**

Turning to T.B.'s first argument, the Court notes that, as an initial matter, the plaintiff bears the burden of proof on disability through the first four steps, including proving the existence of any functional limitations. 20 C.F.R. §§ 404.1512, 404.1520(a)(4)(i)-(iv); *see Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010) ("The burden is on the claimant to

5

satisfy the first four steps."). Nevertheless, T.B. contends remand is necessary because the ALJ impermissibly relied on his lay opinion in determining her RFC, rather than looking to a medical expert. [R. 13 at 8-14.]

The so-called "*Deskin* rule," articulated by the District Court in *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008) and refined by that same court in *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011), essentially states that an ALJ may make a "commonsense judgment about functional capacity even without a physician's assessment," but only when "the medical evidence shows relatively little physical impairment." *Aarron D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00588-CHL, 2024 WL 1288230 at *4 (W.D. Ky. Mar. 26, 2024). As a consequence "[w]here the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion)…the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id*.

Much doubt has been cast upon the *Deskin* rule. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached."); *Williams v. Astrue*, No. 1:11-cv-2569, 2012 WL 3586962, at *7 (N.D. Ohio Aug. 20, 2012) ("RFC is for the ALJ to determine, *see* 20 C.F.R. § 416.945(a); and *Deskin* 'is not representative of the law established by the legislature, and [as] interpreted by

6

the Sixth Circuit Court of Appeals.' ") (internal citation omitted).  Indeed, this Court, in *Regan v. O'Malley*, No. 5:23-CV-00065-GFVT, 2024 WL 1336443 (E.D. Ky. Mar. 28, 2024), recently rejected application of the *Deskin* rule. *See also Ballou v. O'Malley*, No. 6:24-CV-00032-GFVT, 2024 WL 4805342 (E.D. Ky. Nov. 15, 2024).

This Court once again declines to proceed under the *Deskin* "rule."  T.B. contends that this case is distinguishable from *Mokbel-Aljhami* and similar cases such as *Shephard* and *Rudd*, because at least those cases involved some medical expert testimony.  [R. 15 at 4.]; *See also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting requirement that ALJ base RFC finding on a physician's opinion); *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-443 (6th Cir. 2017) (same citing *Rudd*).  The *Deskin* rule does not bind this court nor does T.B.'s argument undermine this Court's skepticism of *Deskin*.  Without *Deskin* there is little to suggest that an ALJ's "lay interpretation" of medical evidence in the record is entirely improper.  The Sixth Circuit has held that the ALJ is charged with evaluating the evidence to determine a claimant's RFC.  *Perry v. Comm'r of Soc. Sec.*, 734 F. App'x 335, 339 (6th Cir. 2018) (quoting *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x. 638, 640 (6th Cir. 2016) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide.")

The ALJ did so here, carefully evaluating T.B.'s medical records, including clinical findings and treatments, alongside T.B.'s own reports.  [R. 11 at 40-45.]  The ALJ considered multiple visits T.B. made to Monticello Medical Associates in recent years, especially noting visits based on shoulder pain and back pain.  *Id*.  As part of this consideration, the ALJ looked at diagnostic imaging and considered the treatments T.B. was prescribed for her issues.  *Id*.  The ALJ carefully credited T.B.'s claims, and "[t]he residual functional capacity was reduced to light

7

to accommodate the claimant's degenerative disc changes and degenerative joint disease." *Id*. at 44. In fact, in reaching his decision the ALJ gave more credit to T.B.'s claims than state agency medical consultants did. *Id*. at 45. However, the ALJ discounted T.B.'s complaints regarding hand strength and swelling as unsupported by the physical examination notes. *Id*. at 44. Not only was it not error for the ALJ to consider the medical data T.B. provided without a medical opinion, but his ultimate conclusion was supported by substantial evidence.

### 2

T.B. also contends that the ALJ erred by failing to account for her non-severe mental impairment in the RFC he formulated. [R. 13 at 14-18.] "The question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence" if the ALJ found any condition to be severe. *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003); *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("When an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error"). In essence, the severity determination is merely a screening tool that is satisfied once any severe condition has been found.

In assessing T.B.'s impairments, the ALJ determined that she had a mild limitation with regard to concentrating, persisting or maintaining pace. [R. 11 at 39.] The ALJ came to this conclusion after considering T.B's report that "her pain interferes with her concentration and that she had difficulty completing tasks." *Id*. However, the ALJ noted that T.B. "did not allege[] disability due to any mental impairment" and that her "medical records are silent with respect to her concentration and focus." *Id*. In crafting T.B.'s RFC, the ALJ made no explicit mention of this mild limitation. *Id*. at 40-45. It is this lack of discussion that T.B. now attacks.

8

Unfortunately for T.B., her concerns are misplaced. It is true that in determining a claimant's RFC, the ALJ should consider the effects of all impairments, including those found "not severe." *See* 20 C.F.R. § 404.1545(a)(2), (e); SSR 96-8p, 1996 WL 374184, at *5. However, the Sixth Circuit has held that "an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020) ("The ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis, fully support our conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p.") The ALJ in this case specifically noted, like in *Emard,* that in making his RFC finding he "must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p)." [R. 11 at 37.]

And, as the Government points out, T.B., even though she has the burden of proof on the RFC determination, "does not highlight any medical evidence that would support the inclusion of mental limitations." [R. 14 at 9.] In this case her mental limitation, such as it is, seems extremely limited. In fact, the ALJ's assessment of it stemmed entirely from T.B.'s own self reporting and not any other evidence. [R. 11 at 39, 257, 273.] In one of those same reports, T.B. did not check a box that would indicate she had issues concentrating and she did not allege disability due to any mental impairment. *Id*. at 39, 257. This "failure to list" has repeatedly prompted other courts to determine that an ALJ has properly evaluated a claimant's condition. *Nejat v. Comm'r of Soc. Sec*., 359 F. App'x 574, 577 (6th Cir. 2009) ("Given Nejat's failure to list obesity in his application and the scant evidence of obesity in the record, the ALJ properly evaluated this alleged condition."); *McMahon v. Saul*, No. 3:20-CV-86, 2021 WL 5154095 at *3-

9

4 (E.D. Tenn. Sept. 9, 2021) ("[I]t is instructive that Plaintiff did not allege disability due to mental impairments in her initial Disability Report.")  T.B. does not cite any further evidence showing greater limitations on her part.  And "[g]iven the lack of medical evidence supporting [T.B's] stance that these health conditions impaired [her] work functioning, the ALJ appropriately bypassed [her] non-severe impairments in calculating [her] RFC."  *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019); *see also Plotkowski v. Comm'r of Soc. Sec.*, No. 2:20-CV-12011, 2022 WL 413371, at *7 (E..D. Mich. Jan. 18, 2022) (collecting cases finding that "the lack of reference to mild psychological limitation in the RFC did not constitute error"), *adopted by* 2022 WL 407079 (E.D. Mich. Feb. 9, 2022); *Avers v. Kijakazi*, No. 3:20-CV-01433, 2021 WL 4291228, at *11 (N.D. Ohio Sept. 21, 2021) (same).

### III

T.B. objects to the ALJ's "lay interpretation" of medical evidence and to the ALJ's failure to include her non-severe mental impairments in her RFC.  While the Court sympathizes with T.B.'s difficulties, its role is not to retry her case.  Instead, the Court finds that substantial evidence supported the ALJ's opinion.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that T.B.'s Motion for Summary Judgment **[R. 13]** is **DENIED**, and the Commissioner's Motion for Summary Judgment **[R. 14]** is **GRANTED**.  Judgment in favor of the Commissioner will be entered promptly.

This the 1st day of May, 2025.

Gregory F. Van Tatenhove
United States District Judge